[No. 10654-6-I. Division One. December 17, 1982.]

*In the Matter of the Marriage of* KATHERINE J. FRASIER, *Appellant, and* WAYNE A. FRASIER, *Respondent.*

*Lorne Grier,* for appellant.

*Jerome Jager,* for respondent.

SCHOLFIELD, J.—Katherine J. Frasier appeals an order modifying a decree of dissolution and awarding custody of her minor daughter to the child's father, Wayne A. Frasier. We affirm.

Katherine and Wayne Frasier were divorced July 10, 1979, and Katherine was awarded the care and custody of the minor child, Jill Mae Frasier, born September 5, 1976. Wayne regularly visited with Jill after the divorce. February 25, 1981, Wayne filed a petition for modification of the decree of dissolution, and a hearing was held on July 22, 1981. Findings of fact and conclusions of law were entered on September 8, 1981.

After the divorce, Katherine had resided in the former family home with Jill until approximately August 1980. At that time, she moved to Walla Walla, Washington, and on September 19, 1980, married William "Jimmy" Watson. Watson is an inmate at the Washington State Penitentiary in Walla Walla. He is currently serving a sentence for an armed robbery committed in 1977. Watson has been married either two or four times previously and has a long history of "legal difficulties," beginning when he left home and quit school in seventh grade. He has no consistent work history.

Following her marriage to Watson, Katherine regularly visited him in the prison 5 days each week, two times a day. She took Jill, aged 4, to the prison visiting area for the 2½-hour visits at least three or four times a week. Witnesses

called by Katherine at the hearing testified that Jill enjoyed going to the prison visiting area and looked forward to her visits with Watson, whom she calls "daddy." The evidence was uncontested that Jill is an intelligent, well adjusted little girl. It was also uncontested that Jill has never been physically mistreated by her mother and that there is a close mother–daughter relationship between them.

Katherine and Jill moved five times within the 11 months immediately preceding the trial. Upon their arrival in Walla Walla, they lived with another woman and her two children for approximately 4 months. They then moved to an apartment, where they remained for approximately 3 months, until deciding to move following a stabbing at the residence next door. They then lived in the home of another inmate's wife for approximately 1 month. Katherine, Jill, and a woman friend next moved to an apartment where they continued to reside at the time of the hearing. After Katherine moved to Walla Walla, Wayne repeatedly experienced difficulty exercising his visitation rights with Jill.

Wayne Frasier had been employed with the Boeing Company in Everett for the 3 years prior to the modification hearing. Since his divorce from Katherine, he had remarried. The evidence showed a stable marriage with his present wife, Linda. The evidence also indicated that Jill gets along well with Linda and that her love for her father was unquestioned.

Wayne's mother, Mrs. W. A. Frasier, testified that Jill had been emotionally upset since moving to Walla Walla, that she changed moods quickly and was reluctant to talk about her home life with her mother. Mrs. Frasier was also concerned about Jill's comments and inquiries about sexual parts of the body.

Wayne testified to a concern about the environment in which Jill was living, where her primary adult associations were with persons emotionally attached to prisoners in Walla Walla. He was also concerned about his daughter

developing a parent–child relationship with a convicted armed robber and about the instability of the home life, which involved five different residences within 11 months.

The trial court had before it the reports of social workers from both Snohomish and Walla Walla Counties. Both disapproved the environment in which Jill was being raised and recommended a change of custody from Katherine to Wayne.

A family court investigator conducted an investigation in Snohomish County relative to this custody modification and reported to the court in a written report dated June 24, 1981. Her report recommends Wayne and Linda Frasier as desirable custodians for Jill, emphasizing their fitness and ability to provide Jill with a wholesome home life. She recommended that custody be changed to Wayne Frasier.

A probation officer connected with the Juvenile Court of Walla Walla County also conducted an investigation relative to the custody modification issue and provided the court with a written report dated June 15, 1981. She reported William J. "Jimmy" Watson had dropped out of school in the seventh grade, had no military service, had a history of legal difficulties and no consistent work history. Her report states that sexual contacts occur between male inmates and visiting women in the visiting room at the Walla Walla penitentiary where small children are present. The probation officer concluded that regular visits to the penitentiary did not serve the best interest of a small child and recommended a change of custody if the evidence disclosed that Mr. Frasier was a wholesome individual able to provide a good stable home environment for his child.

Katherine Frasier's sole assignment of error questions whether the evidence was sufficient to support an order modifying custody. She bases her argument on the provisions of RCW 26.09.260, which reads in pertinent part as follows:

(1) The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court

at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by the prior decree unless:

. . .

(c) The child's present environment is detrimental to his physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

RCW 26.09.260 permits a modification of custody only when there is sufficient evidence to support a finding that:

(1) there has been a change in circumstances, (2) the best interests of the child will be served, (3) the present environment is detrimental to the child's well–being, and (4) the harm caused by the change is outweighed by the advantage of a change.

*Anderson v. Anderson,* 14 Wn. App. 366, 368, 541 P.2d 996 (1975).

The findings of fact made by the trial judge supporting the change of custody are as follows:

Since the entry of the Decree of Dissolution, there have been substantial changes of circumstances which warrant the modification of the Decree of Dissolution. The court finds that both parties have remarried, and that the mother, Katherine J. Frasier, has provided an unstable home for the minor daughter of the parties. She has moved from Seattle to Walla Walla within the last year, has married a convict, and has moved four to five times while living in Walla Walla. The court finds that the present home life of the minor daughter is unstable and detrimental to her physical and emotional health and that the harm likely to be caused by the change of environment would be outweighed by the unstable living situation. The court further finds that the modification is necessary to serve the best interest of the child.

There were sufficient changes in the circumstances of both Wayne and Katherine Frasier, and in those of their child, to satisfy the statutory requirement.

In the trial judge's oral decision, he relied upon his find-

450

ings of the unstable nature of the home environment provided by Katherine, the lack of stability and lack of reliability characterizing the life of Jimmy Watson, and the daily exposure to a prison environment to support his conclusion that the environment in which Jill was living with her mother was presently detrimental to her.

■ Katherine contends in her brief that there must be evidence satisfying the requirement of RCW 26.09.260(1)(c) that "[t]he child's present environment is detrimental to [her] physical, mental, or emotional health". She emphasizes that there is no evidence that Jill has suffered any physical, mental or emotional impairment or damage as a result of her environment. She cites *Wildermuth v. Wildermuth*, 14 Wn. App. 442, 542 P.2d 463 (1975), and the holding in that case as stated at page 445:

> We find that the controlling statute requires more than a showing of illicit conduct by the parent who has custody. There must be a showing of the effect of that conduct upon the minor child or children. *See McDaniel v. McDaniel*, 14 Wn. App. 194, 197–98, 539 P.2d 699 (1975). Unless the record contains evidence from which the trier of fact can reasonably conclude that the child's environment is detrimental to his or her physical, mental, or emotional health and, further, that the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child, the court errs in entering an order changing custody. *See Christian v. Randall,* 33 Colo. App. 129, 516 P.2d 132, 133–35 (1973). While the court's *prediction* of probable harm to the children by their exposure to the misconduct might be accurate, the record here is deficient in that there is no evidence of the effect of the mother's living arrangement upon the children.

The evidence relied upon to support a change of custody in *Wildermuth* was that for 7 years the mother had shared her 2–bedroom apartment with a man who was not her husband and who was, in fact, married to another. The man lived 25 percent of the time with the mother and 75 percent of the time he lived elsewhere. The court remanded the case for a factual determination of the effect of the moth-

er's admitted illicit conduct upon the welfare of the children.

The *Wildermuth* opinion cites *McDaniel v. McDaniel,* 14 Wn. App. 194, 539 P.2d 699 (1975), as authority for the requirement that there must be a showing of the effect of the conduct upon the minor child. In *McDaniel,* the same contention was made that Katherine asserts in this case. The contention was rejected, the court stating at pages 197-98:

> Second, petitioner contends that the evidence is insufficient to show that the children's present environment is "detrimental to . . . [their] physical, mental, or emotional health" as required by RCW 26.09.260(1)(c). We disagree. The unchallenged findings reveal that the children's diet, school attendance and dental care were irregular and that they were exposed to marijuana smoking and the presence of a man living with the petitioner. These findings amply support the conclusion that the environment provided by the petitioner is detrimental to the children.

(Footnote omitted.)

The *McDaniel* case cites no present damage to the children in the findings relied upon to satisfy the requirements of the statute. Irregular diet, dental care and school attendance and exposure to marijuana smoking are all elements of environment. None of them prove present damage to the child.

A living environment can be found to be detrimental to the physical, mental or emotional health of a child without proof that damage or impairment caused by that environment exists and is demonstrable at the time of the trial. An environment may be detrimental even though its deleterious effects have not yet appeared. There is nothing in the language of the statute relied upon or the cases interpreting the statute which compels a court to wait until damage has actually occurred and is demonstrable before taking corrective action in child custody cases.

We hold that the evidence in this case supports the trial judge's findings and conclusion that the best interests of

452

Jill Frasier will be served by changing her custody from her mother to her father. The judgment is affirmed.

DURHAM, A.C.J., and CALLOW, J., concur.