# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parentage of | No. 79059-5-I |
| D.L. and J.L. | |
| | DIVISION ONE |
| ERIK NILSEN, | UNPUBLISHED OPINION |
| Respondent, | |
| and | |
| LEANNE LOWE, | |
| Appellant. | FILED: January 6, 2020 |

APPELWICK, C.J. — Lowe appeals a modification to a parenting plan for twin sons, J.L. and D.L. She alleges that there was not adequate grounds for the trial court to proceed with Nilsen's modification request after she withdrew her request to relocate the boys. She also argues that the trial court impermissibly relied on facts known to the court prior to the most recently adjudicated parenting plan to find adequate cause to modify the parenting plan. And, she argues that there was insufficient evidence of a substantial change in circumstances after the most recently adjudicated parenting plan to support modification. We affirm.

## FACTS

Leanne Lowe and Erik Nilsen are the parents of twin boys, J.L. and D.L. The boys were born on March 2, 2010. They have strong and stable relationships with both parents. Nilsen first sought a parenting plan regarding the children in

2011. While the parentage action was pending, Lowe moved with the boys to California without a court order. She rented out her Washington home and entered a one year lease in California. The court ordered Lowe to return the boys to Washington. Lowe then sought a negotiated plan with Nilsen. The parents agreed on a parenting plan on February 8, 2012. Under the plan, D.L. would reside a majority of the time with Nilsen in Washington while J.L. would reside a majority of the time with Lowe in California. The plan called for the boys to be reunited in Washington by September 2, 2014. One child would remain with each parent in the Puget Sound area. If Lowe didn't return to the Puget Sound area, both children would reside a majority of the time with the Nilsen.

Lowe returned to Washington in between the summer and fall of 2014. Nilsen then petitioned to modify the parenting plan. Lisa Barton completed a guardian ad litem (GAL) report on behalf of both children on August 12, 2015. Barton recommended that the children have close to equal residential time with each parent. But, she recommended slightly more time with Lowe in order to facilitate going to school with their half-sister, Lowe's daughter. She also recommended that the statutory presumption in favor of relocation under RCW 26.09.520 should not apply in this case. On December 23, 2015, the trial court adopted these recommendations in a new parenting plan. The parties subsequently modified the plan by agreement to correct a minor error. The updated plan was filed on February 8, 2016.

About a year later, in early February 2017, Lowe informed Nilsen that she had a potential job offer in Florida. She told Nilsen that she would take the offer

2

and relocate to Florida unless Nilsen agreed to modify the parenting plan. Lowe told Nilsen that "as the primary custodial parent, [she] would have a very strong argument in court for relocation." She said that if Nilsen did not agree to her plan he "[would] be facing BOTH an appeals case and a relocation case." But, if Nilsen approved her updated parenting plan, she would reject her Florida job offer. However, she refused to rule out further relocation, saying only that the reasons for future location would need to be "more imperative," such as her getting remarried to a man in another state. Nilsen agreed to Lowe's demands. Lowe later told the GAL that she "was willing to agree to not move to Florida" because she wasn't really considering it anyway.

One month later, in March 2017, Lowe filed a notice of intent to relocate to California. Lowe stated that her employer had mandated this move. She further stated that she needed to move because she was getting married to a man named Robert Burge, who lived in southern California. Lowe also stated that the move was necessary because her daughter had a skin condition that required her to be in a warmer climate. In her declaration in support of her request, she underlined that the law includes a presumption that children be allowed to move pursuant to RCW 26.09.520. She did not include that her existing parenting plan specifically removed the relocation presumption in this case. Nilsen objected to the relocation. He proposed that if Lowe were to move, the parenting plan should be modified so that the children live with him the majority of the time.

Barton was again appointed as the GAL for the children to address issues related to relocation and development of a parenting plan. She issued her report

3

on June 29, 2017. Barton reported that Lowe's marriage to Burge "does appear to be an afterthought in an effort to gain traction for the relocation action." Burge reported to Barton that that their relationship had "changed" in early March, when Lowe gave her the notice to relocate. Barton also noted that it was "interesting" that Lowe did not mention marrying until Nilsen raised the issue when the parties were discussing relocation. And, Barton learned from Lowe's employer that they considered her move to California to be for "personal reasons" rather than a job requirement as Lowe had claimed. She said that Lowe had provided no evidence regarding her daughter's medical condition requiring her to move to California. Barton also reported that Lowe told her that she had discussed the potential move with the children.

Barton recommended that the relocation be denied. She also recommended that the children should reside primarily with Nilsen. On August 1, 2017, about a month after Barton issued her report, Lowe withdrew her request to relocate and moved to dismiss Nilsen's modification action. Nilsen objected and asked the court to allow his modification action to proceed. The trial court found that Lowe had acted in bad faith throughout the relocation action. It also found that her withdrawal of the relocation notice was disingenuous and submitted in bad faith. The court ordered Lowe to pay $9,811.88 in attorney fees to Nilsen. It also denied her motion to dismiss Nilsen's modification action, but instructed Nilsen to file a separate motion for adequate cause to modify the plan.

On October 12, 2017, Nilsen filed a petition to modify the parenting plan. He proposed that the boys reside with him 15 out of 28 days, and with Lowe 13

4

out of 28 days. The court found adequate cause for a hearing to modify the plan based on Lowe's constant threats of relocation creating a detriment to the children. Lowe filed a notice of discretionary review of the adequate cause determination to this court on February 12, 2018. This court denied review. After a trial, the court approved Nilsen's proposed changes to the parenting plan.

Lowe appeals.

## DISCUSSION

Lowe raises three issues on appeal. First, she argues that there was not adequate cause for the trial court to allow Nilsen's modification action to proceed once she withdrew her relocation petition. Next, she contends that the trial court impermissibly relied on facts known to the court prior to the most recent parenting plan in determining that a substantial change in circumstances warranted modification of the plan. Last, she argues that there was insufficient evidence of a change of circumstances to support a modification.

A trial court may not modify a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the trial court at the time of the prior decree or plan, that a substantial change in circumstances has occurred. RCW 26.09.260(1). A party seeking modification of a parenting plan must submit an affidavit setting forth facts supporting the requested modification. RCW 26.09.270. The opposing party may file opposing affidavits. RCW 26.09.270. The trial court must then determine if the affidavits establish adequate cause to hear the motion. RCW 26.09.270. If it determines that the affidavits establish adequate cause, it shall hold a hearing on an order to

show cause why the request should not be granted. RCW 26.09.270. However, a person objecting to relocation of a child may petition to modify the parenting plan without a showing of adequate cause other than the proposed relocation itself. RCW 26.09.260(6). This court reviews a superior court's determination of adequate cause for abuse of discretion. In re Parentage of Jannot, 149 Wn.2d 123, 128, 65 P.3d 664 (2003).

## I. Withdrawal of Relocation Petition

Lowe argues that the trial court erred in allowing Nilsen's modification action to proceed after she withdrew her relocation petition. She contends that the facts here are comparable to In re Marriage of Grigsby, 112 Wn. App. 1, 57 P.3d 1166 (2002).

In Grigsby, a mother and father had joint custody of two sons. Id. at 4. By agreement of the parties, the boys lived with the mother a majority of the time. Id. After the parties had both moved to Washington, the mother petitioned the court to relocate with the boys, and the father objected and sought a modification of the parenting plan due to the proposed relocation. Id. at 5. After a hearing, the trial court ruled against relocation, but did not immediately rule on the parenting plan modification. Id. at 6. The mother immediately declared her intent to remain in Washington to the court. Id.

Nevertheless, the trial court held another hearing on the parenting plan modification roughly two months later. Id. It justified holding another hearing by voicing concern about potential future proposed relocations, stating it wanted to "retain the status quo as much as possible." Id. at 15. The trial court subsequently

modified the parenting plan to give the father a slight majority of residential time. Id. at 6. This court overturned the modification, holding that once the mother indicated that she would not relocate, the relocation could not serve as the basis for a modification of the parenting plan. See id. at 17.

The facts here differ in two significant ways. First, unlike the mother in Grigsby, Lowe was found to have withdrawn her relocation petition in bad faith. Id. The court in Grigsby specifically declined to reach the question of whether a trial court would have authority to modify the parenting plan in that instance. Id.

Second, the trial court here did not rely solely on the relocation petition as the basis for modifying the parenting plan. Rather, it required Nilsen to show adequate cause on his own modification petition after the petition for relocation had been withdrawn. Nilsen complied by submitting an affidavit as required by RCW 26.09.270. This course of action is expressly recognized in Grigsby. 112 Wn. App. at 17 ("Grigsby is, of course, free to seek modification of the parenting plan should he be able to establish that there has been a substantial change in circumstances of the children.").

The trial court did not err in allowing Nilsen to pursue a modification request upon the necessary threshold showing after withdrawal of the relocation petition.

II. Facts Known Prior to the Most Recent Parenting Plan

Lowe argues next that trial court impermissibly relied on facts known to the court prior to the adjudication of the December 2015 parenting plan when it modified the 2016 parenting plan. RCW 26.09.260 provides that a court should modify a parenting plan only if it finds a substantial change in circumstances "upon

the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan." Facts that are not anticipated by the court at the time of the prior decree are considered unknown for the purposes of showing a basis to modify the parenting plan. In re Marriage of Parker, 135 Wn. App. 465, 471, 145 P.3d 383 (2006). A material change can also be deemed to occur where a provision of the original decree anticipates cooperation and that cooperation is not forthcoming. Selivanoff v. Selivanoff, 12 Wn. App. 263, 265, 529 P.2d 486 (1974).

Here, the parties' most recently adjudicated plan was entered on December 28, 2015.[1] However, the trial court in the modification made extensive findings of fact concerning events that occurred prior to the previous plan. Lowe contends this was error.

That the trial court provided a recitation of the family's history in its findings does not by itself indicate a violation of RCW 26.09.260. The statute calls for the court to determine whether a "substantial change" has occurred. RCW 26.09.260(1). Plainly, it would be impossible to determine whether any sort of change had occurred without an understanding of the status quo. So, to the extent that the trial court included historical facts to provide context for a finding of a substantial change, it did not err.

---

[1] The parties agreed to modify this plan in February 2016 to correct a typographical error. Because the February 2016 was uncontested, the court may look to facts prior to that plan. See In re Marriage of Timmons, 94 Wn. 2d 594, 599-600, 617 P.2d 1032 (1980).

Lowe, however, contends that the trial court did more than simply provide context. She argues that the trial court "based its modification almost entirely on facts that arose prior to the last contested parenting plan." She points to the 18 findings of fact referencing events prior to December 2015, and the court's reference to "long standing patterns" of attempting to relocate.

Lowe raised these concerns to the trial court in a motion for reconsideration. The trial court denied her motion, confirming that its "modification . . . is based on facts and circumstances that have arisen since the entry of the 2016 parenting plan." The trial court further explained that the pre-2016 facts it included were "the history of this family and the context by which all of the facts arising since the entry of the February 2016 parenting plan is viewed."

Consideration of the history of attempted relocation was also permissible to discern whether a "provision of the original decree anticipates cooperation and that cooperation is not forthcoming." Selivanoff, 12 Wn. App. at 265. The previous parenting plan contained a provision that a presumption in favor of relocation would not apply to this case.[2] The trial court here found that provision was "a clear attempt to address the ongoing disruption that repeated relocations have caused." However, the court found the effort was "unsuccessful and ignored by the mother." Consideration of the provision and its history was therefore necessary to determine whether Lowe's lack of cooperation constituted a substantial change.

---

[2] The question of whether a trial court has authority to waive this presumption is not before us and we therefore decline to address it.

The trial court's use of facts known prior to the most recent parenting plan was permissible.

III. Sufficiency of Evidence of Substantial Change

Last, Lowe contends that the there was insufficient evidence of a change in circumstances after December 2015 to support a modification of the parenting plan. A trial court's decision to modify a parenting plan is reviewed for abuse of discretion. See In re Marriage of McDole, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). This decision will not be reversed unless the court exercised its discretion in an untenable or manifestly unreasonable way. Id. A trial court's findings will be upheld if they are supported by substantial evidence. Id.

The trial court determined that a change was necessary because Lowe's repeated attempts to relocate, and repeated involvement of the children in parental conflicts, were adverse to the best interests of the children.

Since the December 2015 plan, Lowe has threatened relocation twice: first, to Florida and then, a month later, to California. She used her first request to relocate, a move she later stated she "was not considering" anyway, to get more residential time from Nilsen. She was forced to withdraw her second request after the GAL uncovered inconsistencies in her proffered reasons for the move. That request came only one month after exacting concessions in exchange for dropping her previous request to move to Florida.

Lowe admitted to discussing the potential move to California with the children, in violation of a prohibition in the parenting plan. She moved to California with her daughter, but without her sons, while a decision from the trial court was

10

pending, making the boys all the more aware of the potential separation from their father. In attempting to relocate to California, Lowe also explicitly relied on the presumption in favor of relocation, by including and underlining the presumption in her request to court. She did not disclose that the trial court had provided in the existing parenting plan that the statutory presumption would not apply to these parents. She acted contrary to the plan and was not candid to the court.

Lowe also involved the children in her attempts to interfere with Nilsen's residential time. She did this by enrolling the children in a Taekwondo class that met on Tuesdays and Thursdays, even though Tuesday was Nilsen's only residential weekday with the boys. She did this one year after having reduced Nilsen's residential time through her threatened move to Florida. She claims she had Nilsen's permission to do so. But, the "permission" was that he had agreed to a different martial arts class two years earlier. She claims that she "didn't force him" to take the children to Taekwondo during his residential time. But, she admits that the boys were aware that one of the classes was scheduled during his residential time, and that the boys had told Nilsen they had class during that time. The boys had a goal of working towards a "black belt" in Taekwondo. The mother framed Nilsen's choice by saying "if he chose to support their goal, then that was up to him." The trial court correctly concluded that this placed Nilsen in a situation to either disappoint the boys or lose his only weekday time with them. The facts support a conclusion of abusive use of conflict by Lowe and of involving the children in the conflict.

11

The trial court had reason to believe that Lowe would continue her attempts at relocation. Just 17 days prior to trial, Lowe e-mailed her daughter's father, indicating that all his visits with their daughter after September 1, 2018 would take place "at [her] residence in Costa Mesa, California." The trial court thus found her trial testimony that she didn't have a residence in Costa Mesa not credible. The court further found that either Lowe did have a residence in Costa Mesa, or she was misleading her daughter's father. The court also found this exchange indicated either that the mother would deliberately schedule her daughter's residential time with her father in Costa Mesa wthout the boys, that she would take the boys with her to Costa Mesa, or that she would be residing in Costa Mesa. The trial court found that Lowe provided no credible explanation for her statements in the e-mail that she resided in California.

Accordingly, the trial court had sufficient evidence of the mother's continued threats of relocation and involving the boys in parental conflict occurring after the prior order to conclude that a substantial change of circumstances in the lives of the children had occurred. The court had additional reasons to believe this behavior would continue under the current residential schedule. Its reasons for exercising its discretion to modify the parenting plan are not manifestly unreasonable. The actual changes are not otherwise challenged.

Lowe argues that there was no evidence the children were being harmed. In fact, she points to the trial court noting the children were doing exceptionally well. But, the best interest standard does not require that the court wait until the children are so damaged that they exhibit measurable harm before protecting them

from behaviors that pose a risk of harm.  See In re Marriage of Frasier, 33 Wn. App. 445, 451, 655 P.2d 718 (1982) ("There is nothing in the language of [RCW 26.09.260] which compels a court to wait until damage has actually occurred . . . before taking corrective action in child custody cases.").  The evidence before the trial court amply suggested the behavior of Lowe posed a risk of harm to the children and was not in their best interest.

The trial court did not abuse its discretion in finding a substantial change in circumstances and granting the modification.

We affirm.

Appelwick, C.J.

WE CONCUR:

Leach, J.